In this case, the Court of Stewart Gross v. Klein on behalf of Plaintiffs, Appellants, and Bess Bair v. Cal. There are four main issues on appeal. The most important, because of its potential implication, of federal enforcement or enforcement of federal environmental laws. It's the applicability of each of the engaged entities, the state agency, to whom it's been delegated federal environmental law responsibilities under 23 U.S.C. Section 327. Well, the express language of Section 327 provides a straightforward answer to the question. I'll spend some time on that question, because of its importance, I would request that the Court issue a published opinion concerning that issue. I'll spend the bulk of my time on the question of timeliness, because it is more multifaceted. CalTrans also raised an issue concerning entitlement to fees by plaintiffs. While plaintiffs did respond to that in our briefing, it is our position that it's better dealt with by the District Court on remand, along with the other entitled issues. The District Court never reached that issue. That's correct. The District Court never reached that issue, or the related issue of whether or not CalTrans' position was substantially justified. Section 327 represents essentially a deal struck between Congress and the states. Congress would allow states to use federal highway money that otherwise would have gone to the Federal Highway Transportation Administration in exchange. States had to comply with all federal laws that the Federal Highway Transportation Administration would have been subject to if it itself had administered the money. Congress, in doing that, would express that by allowing such a delegation, it was not providing any means to avoid any of its other laws. Plus, it not only provided that federal courts would have exclusive jurisdiction to challenge the compliance of state agencies with their delegated federal environmental responsibilities,  which shall be governed by the legal standards and requirements that would apply in such a civil action against the Secretary, had the Secretary taken the actions in question. Where is that? That is Section 327d.2. But those legal standards and requirements, for you to prevail here, you also have to show that that includes the Federal Rules of Appellate Procedure, correct? Because if you don't, then it's a 30-day time period, not a 60-day time period. And you need that 60-day time period, correct? That's correct, Your Honor. Why would we interpret legal standards and requirements to include compliance with Federal Rules of Appellate Procedure? In other words, having those procedures that would apply if the United States were a party, apply to the state. I don't even think you litigated the case that way in district court, did you? Weren't you saying that essentially the California Department of Transportation had so many days to answer the complaint? I don't think you were saying, oh, whatever time the United States government would have had. Then we'd have to start looking through all the rules of civil procedure, appellate rules of procedure, and see which ones would otherwise apply. Yes, Your Honor. So let me answer it. There were several questions that were packed in there. The first response is yes. We do believe that the 60-day deadline under Fram 4 applies here. In part, that is because of this express language, but it's also because under this Court's decisions in Wallace, the Director of the Department of Transportation was acting under explicitly the color of federal law and also was acting explicitly under the color of federal office, federal office being the Department of Transportation. Additionally, under DS, this Court has found that when a state agency is essentially taking their place, I'll move that over. I apologize. This Court did not reach directly a state agency, but when an entity is explicitly taking the place of a federal agency, it's treated as a federal agency for the purposes of Fram 4. To your other point, though, should we be looking at sort of the full pantheon? What Congress intended, and it's explicit in 327, because they say it four or five different ways, and then it's said 67 different ways at the MOU, is that when Caltrans steps in for the Federal Highway Transportation Administration, it steps fully into those shoes and is there in lieu of the Secretary. And what they were saying was there is no need to go through and figure out, well, does this rule apply? Does that rule apply? No, they all apply. They all apply as if the litigation was brought against the Secretary, and that's how you proceed. It's about those consistencies, which actually gets to the point, the other point here on time on this, which is on this question of appealability under EJ. So appealability under EJ, what we're looking at there is it goes to how Congress decided to define what is a final judgment triggering the 30-day deadline. And what Congress said is that final judgment is final and not appealable. This quarter in bond, the Barnhart said, we're not going to look at a particular situation in a particular case. We're not going to impose that inefficiency. What we're going to say is if there's any possibility that the order in question could be appealed, fine, that is appealable. You use the 60 days for appeal, the 30 days, which we used here to try to negotiate a resolution with Caltrans, which we've done in the previous two 327 cases that we had against them. It goes to this point that you're making, which is our litigants have a position in the 327 case to be saying, well, does this one apply? I mean, this one refers to a federal agency. That's what the APA says. I guess I was initially inclined to think that they were right about the performance study. Looking at the cases that were posted, I honestly am not quite sure how the line of cases they have relied on, how the line of cases you go out and intercede with them, or how it goes along with that tension. Well, absolutely. I'd actually point to their case, Concha v. London. So Concha v. London, and actually several other cases, including Bell and Unioil, they all state generally there's no appeal when there's a voluntary dismissal without prejudice. Ordinarily is actually the wording that this court used in Concha. Then what the court did in Concha is say, but in this case we're going to allow the appeal, because we're going to treat this as actually a dismissal with prejudice. So that gets to the point that this court was looking at in Vann. There's always these possibilities, there's these exceptions, because the court in Vann recognized that generally speaking, dismissals on consent, dispositions on consent, they're not appealed, but there are these exceptions. And the point that Vann was making clear was that Congress wanted to get rid of uncertainty. What Congress was looking for, it aimed at in 1985 when they made the amendments, was eliminating the possibility that each of the litigants constantly had this uncertainty. Do I have a final order now? Do I file a motion? And what that creates then is serial motions instead of what the courts want, which is what we did here, which is try to negotiate a resolution with a motion. So that doesn't sound very much like a resolution. You could have obviously filed a motion, so it's just a different definition. It's based on a different definition. Absolutely. So we could have done that, but I'm saying the policy reasons expressed explicitly in Vann were that. So in a heartbeat. I think it was to avoid having to file multiple allegations. So I think you mentioned that. But I guess my discomfort with your position here is that you make Vann assume, basically, that if there is any little teeny exception to a general rule of autonomy of voting, then he's the full autonomous owner. Well, they're autonomous owners. I do believe that's what Vann says, but we can look at our particular situation here because Vann spoke explicitly about what we had here, which is dismissal of internal consent. So it was a free man that everyone said is fine. Send it back. It's basically a dismissal without prejudice. Go back to the INS. INS can figure it out. INS is going to consider the arguments. What they said is, look, when you've got these kinds of dismissals on consent, there's a number of situations that can arise which can create an appealable issue. You can have interlocutory orders that were entered previously that get merged that someone wants to appeal. You can have situations where someone comes back and argues, well, there's no actual consent because maybe, for example, the drafting of the order, that actually wasn't precisely what they thought it should say. That also goes to an issue of prejudice, which this court recognized in James was another opportunity, where someone could come back and say, well, you know what? I know I said that's to be dismissed, but there's something wrong in this order. Another exception would be where there's a third-party right of intervention. In this situation, well, you don't have to, under Vann, look at this situation. Under this situation, you had the involvement of the Federal Highway Transportation Administration. Explicitly, the Federal Highway Transportation Administration was given, under the MOU, seven days to review any appeal. What were they supposed to do with that? Was that superfluous? No. It was for them to consider what this appeal meant. It could have intervened. And this court, after the case was cited by Caltrans, acknowledged that even when parties themselves abandoned an appeal, and that's more another opportunity, didn't have the right to appeal, a third party, if they independently have standing, can intervene. All of this creates what this court focused on in Vann as the possibility of it not being final, the possibility of an appeal. And what the court was saying is, we don't want the courts or the litigants to be sitting in this period wondering, is there a possibility? Is that possibility significant enough such that I need to file now and may file another one later, to your honor's point? Yeah, but I think this is going to be the piece that we're going to have to bust. Somebody can say, well, I'm not going to file unless you file an appeal. If there were ever going to be a case where you say no, certainly both sides, it's not even a one-sided argument, it's a two-sided argument, both sides are going to be looking at it. What would be possible to do with their options? Right, and where that goes to, your honor, is what Vann established and what we were following was explicitly what it said was uniform guidance. So this is uniform guidance that says, litigants, if you've got an order here, and that's appealable in any circumstance, the uniform guidance is, add 60 days to it, then you file a motion after those 60 days, you have 30 days after that to file. And then don't go and look at, well, what's the opportunity? Is it federal highway transportation going to intervene? Is there some contract that's going to intervene? Given your interpretation of Vann as that broad, do you see any instances in which it wouldn't simply be letting the clock run out on the time for the appeal? Or is that the rule? Because Vann does talk about types of judgments, giving us the impression that there are some types that you wouldn't let the clock run out on. Right, and your honor, I can't say sitting right here that there would be none. I'm not, I think that, I don't think it's that broad, because it does say, as you said, is there a type? The important here is, the type of judgment we have here, inter-doc consent, there are possibilities of appeal. There are exceptions to the general rule. And under Vann, that's enough. The voluntary dismissal without prejudice, there are opportunities for that to be appealed of that type. So whether some other type of order may not ever be appealable, it could well exist. What's important here, and what resolves this question, this case, is that this type of consented to judgment can, in some circumstances, be appealed. Yes, that's right. And that is directly on point, but you would just say that, hey, we can just follow up with different types of analysis, and therefore, we just have to be honest with each other. If you were over, you'd have to acknowledge that you're just coming to circuit as well. Yeah, and in Impreza, the Federal Circuit recognizes that explicit split between Bryan and Vann. So the Federal Circuit says in Impreza, there are different ways in which circuits have looked at this. There's the minority position represented by Bryan, and then there's the majority position represented by Vann. And then there's a long description of this court's reasoning with Vann, and then the Federal Circuit adopts Vann's reasoning.  The judge will decide the concerns of the court. Good morning, Your Honors. I am with the court. My name is Stacey Loud. I represent the state of California. This appealed concerns an untimely motion for attorneys' fees by non-prevailing plaintiffs that voluntarily dismiss the entire case. The court can affirm the district court's order denying the attorneys' fees based on any single one of the grounds agreed by the state, but I'd like to focus on two of them here. Okay, just to make sure, actually, the position is okay. So you're not going to take a position on basically what used to be a few of the issues before, so you just let them, they asked the judges whether the states in particular stepped into the shoes of the case, and they're not going to take it? Well, I respect your honor of the state, decided not to take a position on whether or not EJA applies to state entities in this case, and the court may not reach this issue, because it can affirm the district court's decision on any ground. There's even a line of authority saying that where a jurisdictional issue is sufficiently complex, the court may not even address that, where there's a zero for affirming the district court's decision otherwise. Okay, so here there are, I'd like to discuss two of those grounds. First, the appellants are not available for an investigation. It's not an investigation, they're not available for an investigation, because, I mean, Ryan makes a lot of sense comparing it to that, but why isn't there a part of Ryan that, I mean, they can't follow up, they follow up just on a part of the analysis concerning whether or not it works, or it's not a tool? Well, the appellants filed their motion for attorney's fees two months later, and the district court was correct to find that. Here we have a voluntary, stipulated dismissal of the entire case without prejudice. This isn't the type of case where the court entered a partial judgment, or there was some agreed party. This is a case where the entire case was dismissed at the outset by agreement of the parties, because it was not right. And there is a line of cases in this circuit stating that this type of order is not appropriate. Well, that's just what I'm looking for. So it seems to me, yeah, I took a look at all your cases, and none of them, other than Ryan, is what I'm interested in talking about, is the raw madness involved in trying to get the court to actually submit a complete judgment. Right, so they're all just talking in general terms, but I think you're probably correct that they all do say the general rule is no punitive. I think we have cases, and there are a number of other cases, and I wonder, let's say, if there is any probability extension that could ever possibly apply as a category, I forget about the types of things that you're using for this case, to get the extra time. I guess that's what I want you to confront, because I'm struggling on that end. I don't know which way you should be looking on that question. Mr. Honorable, the appellant's main ban, way too early. That case was a case where there was a favorable judgment in a supplemental security code case, which followed a remand under Sentence 6, and that was a very narrowly drawn case, and in that case, the court held that because under the statute, that delaying of the order, it was appealable, that the exception should have been removed, and the appellant seems to take the case and broadly state that all judgments that parties extended to are therefore appealable, and that's not what the case holds at all, and the same goes for the lead case where there was a remand order to the Board of Immigration Appeals. In that case, the statute provided for an appeal of that type of order. The present case, the Federal Circuit reaps the ban case too oddly. It is a bond case, just does not state that all exempted judgments. That's not the principle of the Federal Code. That's the principle of the statute. We're trying to figure out whether the order is a risk bond, and if there is any exception that would allow an appeal, even if it's extremely remote or not relevant at all to the given case, that's enough to get them the extra time delay. I mean, I read from Code 5, and it did seem to say, basically, that is the way it were, and he's so convinced that everybody's overeating, and that that was the case. Well, it has banned, and we believe, those other cases rely on situations where there is a statutory right to appeal, and it has a general rule. I don't think that they say that where there is the tiniest exception, that the tiniest exception can overcome the general rule. And here, the appellants haven't even cited an exception to this line of cases. I've seen letter voluntary stipulated dismissal without prejudice in other cases on appealable. They say that, well, because the FHWA could theoretically intervene in this case, that makes it appealable, but they don't explain how the FHWA could have appealed a non-appealable order, which is the case here. So, you know, just to sum, this is just the type of order that has been long established to not be appealable, but the appellants have not cited any case otherwise, and they haven't cited any exceptions. So, unless the court has any questions on that issue... I have doubts about whether you're right, but I don't have any more questions. If that's all you have to say on that, then you can explain it to the others. Because you're right, you don't have to rely on everything. You can just put on one thing. So what's the other point you wanted to make? Well, that the appellants are not revealing the parties that are underneath it. You are. I'm sorry. But what I'd be more interested in hearing, and I'm not going to speak for my colleagues, is how about the 31st and 16th, because that's usually the district court that's grappling with that. The district court can't even deal with the 31st. So how do we do that in this case? Because the issue is so clear on the record that the state prevails here. Because there was no relief, judicialization relief, on the merits of the appellant's claims. There was nothing in this case that required the state to do or to not do something. There was no judgment, no settlement. There was only a stipulated order for dismissal of the entire case without prejudice because it was not right. And that stipulated order did not provide any relief. There are three sets of facts that demonstrate this. First of all, the stipulated order contained no mandatory language whatsoever. It's only a list of actions that occurred in the past, a statement in these actions that made the case unright, and an agreement by the parties to dismiss the case. And then second, every single action was to defend stipulated order. It occurred in the past. It also was a voluntary action on the part of the state or occurred outside of the context of this litigation. And the Buchanan case under the Supreme Court was exactly on point here. In that case, the court held that parties are not prevailing parties if the relief they claim to have obtained was the result of an entirely voluntary action by the defendant. And here, that's true. The state rescinded its project approval one month before this case was even filed. It withdrew its federal determination without consulting with the appellants. It made its decision entirely on its own. And that's established by the record. And then some of the context matters here, too. The appellants stipulated to dismiss this entire case after reviewing the state's motion to dismiss because the things were unright. There was no negotiation, no settlement. Basically, the appellants conceded that the case was unright and they dismissed on that ground. And it's relevant here that the stipulated order for dismissal basically flips the language from the state's motion to just the exact same rationale. And it contains no mandatory language requiring the state to do or to not do something here. And the appellants' argument, well, paragraph 17 of the stipulated order said the state said without further environmental review, including a new people determination, the project cannot proceed. And they state that's the relief. But that's not a statement of relief. That's a statement of fact that only reflects the fact that the state voluntarily withdrew its new people determination. And therefore, there needs to be a new people determination before the project can proceed. And that's just a statement of the law. And again, this was a statement that was made in the very first paragraph of the state's motion to dismiss, explaining why the case was unright. So, and I'm just curious, did you, were you the one, because I remember all these time, seeing these suggestions that the district court could just seem so confident they're going to win the warrants of discouragement, why did the district court never jump the time to use the warrants of discouragement? Seeing you and the court down that wrong track? Well, it wasn't a wrong track, Your Honor, because the state does win on the time-first grounds as well. But yes, the state made the time-first argument. And it also made the prevailing party argument. I mean, I have, I don't speak for the colleagues, but I have no evidence that the district court first made the prevailing party argument. So that's something that might be ordinarily reviewed for a case of discouragement. And there's another question. What do you think about that? It wouldn't be a case of discouragement anymore. Right, so it wouldn't be a problem. That's what I felt. And that's why I guess I'm saying, if you're so, if you didn't want to talk about anything else, you come here today, and all you want to talk about is the prevailing party. Well, maybe that's it. Your main argument is that you're struggling with the state. The case here was supposed to be a little shorter. The court that's supposed to review it in the first instance never looked at it. It got sidetracked with all these time-famous questions that are actually quite tricky. Maybe you win. Maybe you don't. So I don't know. I guess what I say you do in the remaining time you have is why don't you focus on the 31st and 16th? Because we heard you on the prevailing party. And maybe my colleagues will agree with you on that. But I will just tell you that's not where I'm at. So I want to hear what you have to say about why maybe, even if they're right on the Van Linden front cases, why you're still not with the University of Chicago. Well, I don't care if they're not right on the Van Linden cases, because those are narrowly front cases. But even if they were, they don't carry the day along with the 31st and 16th, because judicial standards and requirements that grace doesn't refer to the federal rules that only state be called a U.S. agency. The state does not entirely be called a United States agency just because it's required to take on certain federal environmental review responsibilities. So just looking in the plain language to judicial standards, that doesn't apply to a rule regarding time units within the federal rules of the university. I think it's dangerous to not respect or think that's how I judge judicial standards. And it's something more like the standard of review under the APA, which I'm reporting here. And in the requirements, well, I think the fact that the U.S. could probably extend extra amount of time to file an appeal, that's not a legal requirement. Instead, that's an allowance to the federal government giving them extra time to decide whether or not to file an appeal because of the very unique processes within the federal government agency that don't apply to the state. So it's a value which does not apply to this federal rule. Let me just add, if it's your case, or in case it's anybody else's, I'm not sure. Well, wait a minute. Director. I mean, I don't know which one of you is right. It seems to me perfectly natural to think that it's applying to all legal requirements since it's a federal procedure. I don't know if it's a federal procedure. And it could be more narrow. But we have no, I'm sorry, excuse me, we have no kind of cease and desist. I'm not sure what the basis of your argument is. Well, Your Honor, if you look at section 327 and the alloy between the FHWA and the state, those documents really talk about the state taking on federal environmental responsibilities. They don't talk about specific training and statutes. And so if you show that the state is meant to step entirely into the shoes of the FHWA for all purposes, or that it's a state-considered U.S. agency, say you were deemed since a year and you're as a state agency, it's just taking on specifically delineated responsibilities from the state. And because the district court's order can be approved, which isn't in any group, and the appellants are not the billing parties, this is completely clear based on the record, but the state also prevails on the basis of the type of medicine it needs. It needs only prevail on one of the two rounds, which is prevails on both medicine and other medicines. So it's a district court's decision. Okay, great. Thank you very much for your argument. Let's give the witnesses a chance to reply. Thank you. So first, on this question of 30 days versus 60 days, you're all interpointed to the lack of guidance on how to read it. I think that the context of 327 makes clear how to read it. It comes, 327D itself talks about giving exclusive federal jurisdiction to full courts against states who are litigating this, and then D2, which is the provision here, falls under that. Clearly, that indicates Congress's mind, its intention was we're talking about the rules that will govern the litigation. Also, one of the topics that Congress was not bringing up is the independent of 327. This court's authority under Wallace, as well as Diaz, do find that the court can find that 30 to 60 days under FRAP 4 applies to Caltrans, because they're acting under the color of law, they're acting in the color of federal office, and they are a state, a federal agency, and the purpose of what they're doing at that time. Let me go back to that. So in this case, and I know that this isn't any kind of precedent or anything like that, but in this case, when you served the state, did you serve them in the manner you would have served the federal government, which is under Rule 4I? When they responded to the complaint, did they get the time of the state, or did you acknowledge and stipulate that they could have the time that the federal government would have in responding to a complaint, which is a longer period of time? Did you apply any of the rules that would apply to the government? Thank you, Your Honor. That was a question you had before, and I can answer other questions about that. The instance they brought up in their papers, how that actually came procedurally is, we filed our notice of intent under the ESA at the same time that we filed our first complaint. Thus, there was negotiations between us and the state saying, you don't need to respond to our first complaint. You can respond to the first amended complaint once the time period expires because we're adding an ESA claim. There was never any discussion about, you know, what the rules otherwise would have required in terms of timing. What it was was simply, you guys don't need to answer the first complaint. Answer the second complaint. What do you want? That's how much time you want? That's fine. Let's go. So what I would say, Your Honor, is we never, neither of us ever turned our minds to that because we weren't holding them to any deadlines in terms of responding to their complaint. We were giving them whatever time they wanted because we intended to amend and add an ESA claim. So there wasn't any of those opportunities for us to make that determination in that context. And then once we're off from litigating, then we're treating them as a federal agency for the purposes of everything we're litigating against them in the federal court. The APA is applicable to them. NEPA is applicable to them. And that's what we're doing. Now, to this question about they raised, basically they tried to narrow Vaughn. See, Vaughn was just because of a statutory exception. If you look at Vaughn and you look at the basis on which Vance found that there are exceptions to the general rule of non-availability, this is in footnote 5 on page 609, they actually go through a number of exceptions that are not based on statutory exceptions. They're based on the basis of condom law exceptions that I just described where something exceptional has occurred, which means even though it was a consent judgment, someone could have killed me. That's what they based it on. There wasn't any statutory issue. You were actually over here somewhere. Oh, you have a burning point. I do not. I'm sorry. You're on. Thank you very much. Thank you very much for your helpful arguments on both sides. The case to start will be submitted, and we will move to our next case on the calendar, which is Reynolds v. Metropolitan Life Insurance Company.
judges: Fernandez, Watford, Staton